IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| ANNE KAWAS; and PAUL KAWAS, | |
| Plaintiffs, | CIVIL ACTION NO.: 2:20-cv-138 |
| v. | |
| JAMES SPIES; and DARLENE SPIES, | |
| Defendants. | |

**O R D E R**

This matter is before the Court on Defendants' Motion to Strike Plaintiffs' Supplemental Expert Witness Report. Doc. 78. Plaintiffs responded, and Defendants replied. Docs. 79, 81. For the following reasons, I **GRANT** Defendants' Motion to Strike.

**BACKGROUND**

Plaintiffs filed their Complaint on December 21, 2020, asserting claims related to the sale of real property that occurred in October 2019. Doc. 1. The Court entered a Scheduling Order setting, among other things, a deadline for the service of Plaintiffs' expert witness reports. Doc. 10. The schedule was amended, and Plaintiffs' expert witness reports were ultimately due August 16, 2021. Doc. 13. Plaintiffs disclosed the expert report of H. Hal Sigman, a real estate appraiser.

Defendants filed a Daubert motion to exclude certain testimony from Mr. Sigman. Doc. 37. Specifically, Defendants challenged Mr. Sigman's ability to offer testimony concerning his paired-sales analysis, which he utilized to determine the value of Plaintiffs' home with and without the alleged defects. I granted Defendants' motion on June 7, 2022, concluding Mr.

Sigman's paired-sales analysis was not based on sufficient data and Mr. Sigman's conclusions from the paired-sales methodology were not reliable.  Doc. 51.  I determined Mr. Sigman's challenged opinions were inadmissible because, among other things, his paired-sales analysis was based on a single pair of sales, which was insufficient.  I ordered: "Sigman is prohibited from testifying on his paired-sales analysis, the discount rate he derived from his analysis, and the damages he calculated to Plaintiffs' home as a result of that analysis." Id. at 12.  Plaintiffs did not object to this Order or seek reconsideration of the Order by the District Judge.

On December 9, 2022—over six months after the Court ruled on Defendant's Daubert motion——Plaintiffs filed a new expert witness report by Mr. Sigman.  Doc. 75-1.  At that point, the parties had completed discovery and filed cross-motions for summary judgment, the Court ruled on those summary judgment motions, and the case was set for trial.  Mr. Sigman titles his new report as "Response and Supplement to FRCP 26 Report Dated August 16, 2021." Id.  The new report contains a little over one page of narrative text along with two pages of figures and calculations labelled "Shadow Brooke Village–Paired Sales Analysis."  The narrative section of the new report is difficult to follow, but it appears Mr. Sigman is: defending the data and methodology he used in his initial report; criticizing the legal authority and arguments made by Defendants in their Daubert motion (filed nearly 10 months earlier); expressing disagreement with the Court's reasons for excluding the opinions contained in his initial report; and providing a paired-sales analysis based on sales of units at the Shadow Brooke Village development.  Regarding the Shadow Brooke Village paired-sales analysis, Mr. Sigman expressly states he collected the underlying sales data and performed the analysis of that data before he issued his initial report, but he chose not to include the analysis because the calculated discount rate was too large.  Mr. Sigman does not state he changed his view the rate was too large or that he

2

acquired any new data—he simply states he has updated his analysis to include those earlier calculations.

On December 22, 2022, Defendants filed the instant Motion to Strike Mr. Sigman's new report. Doc. 78. Plaintiffs responded in opposition. Doc. 79.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 26(a)(2)(B)(i) provides a written expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Supplementation of the expert witness report is required "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "Rule 26(e) authorizes supplementation of expert reports only when necessary to correct material errors or omissions caused by inadvertence or the receipt of new information that was unavailable at the time of the initial report." Jones Creek Investors, LLC v. Columbia County, CV 111-174, 2014 WL 12618171, at *3 (S.D. Ga. Oct. 29, 2014), *objections overruled*, 98 F. Supp. 3d 1279 (S.D. Ga. 2015).

The expert's duty to supplement does not mean the expert has a right to supplement at will. Companhia Energetica Potiguar v. Caterpillar, Inc., Case No. 14-cv-24277, 2016 WL 3102225, at *6 (S.D. Fla. June 2, 2016) (quoting Rojas v. Marko Zaninovich, Inc., No. 1:09-CV-00705, 2011 WL 4375297, at *6 (E.D. Cal. Sept. 19, 2011)). While some supplementation is appropriate (and even required), it is improper for an expert to provide a supplemental report that includes a new theory or opinion. Brucker v. Lowe's Home Centers, Inc., No. 2:10-CV-405-FTM-29, 2012 WL 2225818, at *2 (M.D. Fla. June 15, 2012) ("A revised report which includes

a new theory or opinion is not proper supplementation under Rule 26(e)." (collecting cases)); United States v. Marder, 318 F.R.D. 186, 190 (S.D. Fla. 2016). Indeed, courts have recognized "experts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions." Sandata Techs., Inc. v. Infocrossing, Inc., Nos. 05 Civ. 09546, 06 Civ. 01896, 2007 WL 4157163, at *6 (S.D.N.Y. Nov. 16, 2007).

## DISCUSSION

Mr. Sigman's attempt to supplement his expert witness report is plainly impermissible. Mr. Sigman's defense of his original analysis, criticisms of Defendants' arguments, and disagreements with the Court's prior ruling are all immaterial. The Court ruled on Defendants' Daubert motion, that ruling was not challenged, and it remains the Order of the Court.

Mr. Sigman's attempt to "supplement" his earlier expert report and opinions with the Shadow Brooke Village paired-sales analysis is improper. It is well settled Rule 26(e) "does not permit supplementation to add points that could have been made in the original expert report or to otherwise shore up weaknesses or inadequacies." See Jones Creek, 2014 WL 12618171, at *4 (citing Sommers v. Hall, No. CV408-257, 2010 WL 3463608, at *2 (S.D. Ga. Sept. 1, 2010)).

Mr. Sigman expressly states in his new report he had the information that formed the basis for the supplement at the time of he prepared his original report, but he "chose not to include those sales" in that original report. Doc. 75-1 at 1. In other words, Mr. Sigman deliberately excluded this information—which Plaintiffs contend is material—from the original report. Mr. Sigman did not inadvertently leave out that information. Mr. Sigman's effort to "supplement" now based on that information is improper.

4

Plaintiffs argue Mr. Sigman's new opinions on the Shadow Brooke Village paired-sales analysis "address[es] Defendants' argument" from their original Daubert motion and addresses the "concern of the Court" discussed in the Daubert Order.  Doc. 79 at 3.  These arguments show Mr. Sigman is not actually attempting to "supplement" the original report, as that term is used in Rule 26 (i.e., to correct material errors or omissions caused by inadvertence or the receipt of new information).  Instead, Mr. Sigman is attempting to provide a new opinion based on information that was available long ago, all in order to circumvent the Court's ruling on Defendants' Daubert motion.  This is not "supplementation," but an effort to get a second bite at the apple months after the Court issued its Order.  This tactic is impermissible.

Because Mr. Sigman's report is essentially a new expert report, offering a new opinion based on the Shadow Brooke Village paired-sales analysis, the Court must consider the timeliness of the disclosure and whether any untimeliness should be excused.  See Guevara v. NCL (Bahamas) Ltd., 920 F.3d 710, 718 (11th Cir. 2019) (affirming trial court's exclusion of late disclosed supplemental expert report under Rule 37); New v. Kohl's Dep't Stores, Inc., Case No. 1:18-cv-2529, 2021 WL 3417524, at *3 (N.D. Ga. Feb. 18, 2021) (determining a late declaration claiming to supplement an expert report was essentially a new expert report).  Mr. Sigman's new report was filed on December 9, 2022, nearly 16 months after the August 16, 2021 deadline for Plaintiffs to disclose their expert reports.  Thus, the new report is clearly late.

A late-disclosed expert report can only be allowed in if the delay in submitting it was substantially justified or harmless.  See Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless.").  Here, the delay in submitting the report is not substantially justified.  As

discussed above, Mr. Sigman made a deliberate choice to exclude the Shadow Brooke Village paired-sales analysis from his original report and is only making efforts to supplement to avoid the effects of an adverse <u>Daubert</u> ruling.  <u>See</u> <u>Companhia</u>, 2016 WL 3102225, at *8 (finding delay was not justified where information about the issue was available before initial expert reports were served).  Plaintiffs provide no explanation for why Mr. Sigman did not include this information in his initial report.  Even more glaring, Mr. Sigman waited more than six months after the Court's ruling on the <u>Daubert</u> motion to attempt to supplement, without providing any explanation for the delay.  Thus, the delay was not substantially justified.[1]

The delay is also not harmless.  Mr. Sigman's new report was filed after the close of discovery, after the <u>Daubert</u> ruling was issued, and after the Court ruled on the parties' motions for summary judgment.  <u>See</u> Docs. 17 (Scheduling Order setting close of discovery by Nov. 15, 2021), 28 (Scheduling Order allowing for one out-of-time expert deposition on Dec. 30, 2021), 51 (Order granting motion to exclude filed June 7, 2022), 57 (Order on motions for summary judgment filed Sept. 30, 2022).  Allowing Mr. Sigman to rely on his new report at this stage in the litigation would likely require the Court to reopen discovery to allow Defendants time to

---

[1] Plaintiffs accuse Defendants of "[withholding] material information from the Court" by not disclosing the Shadow Brooke Village paired-sales analysis during the <u>Daubert</u> motion briefing.  Doc. 79 at 5.  Plaintiffs' accusation lacks any merit.  First, the contention is factually incorrect.  Defendants provided Mr. Sigman's deposition transcript as an exhibit to their <u>Daubert</u> motion, and the Shadow Brooke Village paired-sales analysis is discussed in that deposition.  Doc. 37-1 at 62.  Second, in the deposition, Mr. Sigman expressly stated he declined to use the Shadow Brooke Village paired-sales analysis in his calculation of a discount rate because including that analysis would have resulted in a discount rate that was too "extreme."  It would have been improper for the Court to approve Mr. Sigman's opinions based on the Shadow Brooke Village paired-sales analysis when he expressly stated he was not relying on that analysis.  Finally, because Defendants moved to exclude Mr. Sigman's opinions in the <u>Daubert</u> motion, Plaintiffs had the burden to lay the proper foundation for the admissibility of Mr. Sigman's opinions, meaning Plaintiffs—not Defendants—were obligated to come forward with information they believed supported admissibility.  Plaintiffs' suggestion Defendants somehow acted improperly lacks all merit.  Defendants assert the Court would be justified in ordering Plaintiffs and their counsel to show cause as to why they have not violated Rule 11(b), but Defendants stop short of asking the Court to do so.  The undersigned declines any invitation to issue a show cause order sua sponte.

reopen Mr. Sigman's deposition and reopen the period for Defendants to file any motions challenging the admissibility of Mr. Sigman's new opinions. Doing so now would result in additional expense to Defendants and risks delaying trial.

For all these reasons, Mr. Sigman's new report, filed December 29, 2022, doc. 75, shall be struck. Consequently, Mr. Sigman shall not be permitted to offer any testimony at trial based on the new report.

## CONCLUSION

For the foregoing reasons, I **GRANT** Defendants' Motion. I **STRIKE** the supplemental expert report. Mr. Sigman is prohibited from testifying on his paired-sales analysis (to include the Shadow Brooke Village paired-sales analysis), the discount rate he derived from his analysis, and the damages he calculated to Plaintiffs' home as a result of that analysis.

**SO ORDERED**, this 8th day of March, 2023.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA